UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------ X
JACOB SPUHLER,                       :
                                     :
              Plaintiff,             :      CASE NO.: _____
                                     :
        -against-                    :
                                     :
AK STEEL HOLDING CORPORATION,        :
RALPH S. MICHAEL, III, ROGER K.      :
NEWPORT, DENNIS C. CUNEO, SHERI H.   :
EDISON, MARK G. ESSIG, WILLIAM K.    :
GERBER, GREGORY B. KENNY, DWAYNE     :
A. WILSON, VINCENTE WRIGHT, and      :
ARLENE M. YOCUM,                     :
                                     :
              Defendants.            :
------------------------------------ X
```

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Jacob Spuhler ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against AK Steel Holding Corporation ("AKS" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with AKS, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9.  Plaintiff's claims arise in connection with the proposed acquisition of AKS by Cleveland-Cliffs Inc. ("Cleveland-Cliffs")

through Pepper Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On December 2, 2019, AKS entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Merger Sub will merge with and into AKS, with AKS surviving the merger as a direct, wholly-owned subsidiary of Cleveland-Cliffs (the "Merger"). Upon consummation of the Merger, each share of AKS common stock will be converted into the right to receive 0.400 shares of Cleveland-Cliffs common stock (the "Merger Consideration").

3.      On January 8, 2020, in order to convince AKS public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Registration Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for AKS and Cleveland-Cliffs; and (ii) the valuation analyses performed by AKS' financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs").

5.      The Proposed Transaction is expected to close in the first half of 2020, so the special meeting of the Company's shareholders to vote on the Proposed Transaction is imminent (the "Shareholder Vote").  Therefore, it is imperative that the material information that has been omitted from the Proxy is disclosed prior to the special meeting, so Plaintiff can properly exercise their corporate voting rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to AKS public common shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants'

violations of the Exchange Act.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction over all claims asserted herein pursuant to Section

27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the

1934 Act and Rule 14a-9.

8.      Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over each Defendant by this Court permissible

under the traditional notions of fair play and substantial justice.  "Where a federal statute such as

Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes

whether the party has sufficient contacts with the United States, not any particular state."  *Sec.*

*Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has

minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over

the defendant in any federal district court."  *Id.* at 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C.

§ 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact

business in this District.  Indeed, AKS common stock trades on the New York Stock Exchange

("NYSE"), which is headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d

471, 484 n.13 (2d Cir. 2003) (collecting cases).  Further, AKS' proxy solicitor, Georgeson LLC

is located in this District at 1290 Avenue of the Americas, New York, NY 10104.  In addition,

the Company's counsel for the Proposed Transaction, Weil, Gotshal & Manges LLP is located in

this District at 767 Fifth Avenue, New York, NY 10153.

## PARTIES

10.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of AKS common stock.

11.      Defendant AKS is a Delaware corporation with its principal place of business located at 9227 Centre Pointe Drive, West Chester, Ohio 45069.  AKS' common stock trades on the NYSE under the ticker symbol "AKS."

12.      Defendant Ralph S. Michael, III is, and has been at all relevant times, a director of the Company and its Chairman of the Board.

13.      Defendant Roger K. Newport is, and has been at all relevant times, a director of the Company and its Chief Executive Officer.

14.      Defendant Dennis C. Cuneo is, and has been at all relevant times, a director of the Company.

15.      Defendant Sheri H. Edison is, and has been at all relevant times, a director of the Company.

16.      Defendant Mark G. Essig is, and has been at all relevant times, a director of the Company.

17.      Defendant William K. Gerber is, and has been at all relevant times, a director of the Company.

18.      Defendant Gregory B. Kenny is, and has been at all relevant times, a director of the Company.

19.      Defendant Dwayne A. Wilson is, and has been at all relevant times, a director of the Company.

20.     Defendant Vicente Wright is, and has been at all relevant times, a director of the Company.

21.     Defendant Arlene M. Yocum is, and has been at all relevant times, a director of the Company.

22.     The defendants identified in paragraphs 12 through 21 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with AKS, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

23.     AKS through its subsidiaries, produces carbon, stainless, and electrical flat-rolled steel for automotive, infrastructure, manufacturing and other markets, as well as carbon and stainless tubing for truck, automotive, and other markets.  Facilities include blast furnace, electric furnace, and tubing operations in Ohio, Kentucky, Pennsylvania, and Indiana.

24.     Cleveland-Cliffs supplies iron ore pellets, lumps and fines to blast furnaces in the global steel industry.  It is in the process of expanding its customer base to Electric Arc Furnaces.

25.     On December 2, 2019, the Board caused the Company to enter into the Merger Agreement.  Pursuant to the terms of the Merger Agreement, the Company's stockholders only expect to receive 0.400 shares of Cleveland-Cliffs common stock for each share of AKS common stock they own.

26.     On December 3, 2019, the Company issued a joint press release announcing the Proposed Transaction, which stated in relevant part:

*Cleveland-Cliffs to Acquire AK Steel*

**CLEVELAND & WEST CHESTER, OH - DECEMBER 3, 2019 -** Cleveland-Cliffs Inc. (NYSE: CLF) and AK Steel Holding Corporation (NYSE: AKS) are pleased to announce that they have entered into a definitive merger agreement pursuant to which Cliffs will acquire all of the issued and outstanding shares of AK Steel common stock.

Lourenco Goncalves, Chairman of the Board, President and CEO of Cliffs, will lead the expanded organization.

Under the terms of the merger agreement, AK Steel shareholders will receive 0.40 shares of Cliffs common stock for each outstanding share of AK Steel common stock they own. Upon completion of the transaction, Cliffs shareholders will own approximately 68% and AK Steel shareholders will own approximately 32% of the combined company, respectively, on a fully diluted basis.

The fixed exchange ratio implies a consideration of $3.36 per share of AK Steel common stock and represents a premium of 16% based on the closing share prices of Cliffs and AK Steel common shares, respectively, as of December 2, 2019, and a premium of 27% based on the 30 day volume weighted average price of AK Steel common shares. The transaction implies an aggregate consideration to AK Steel shareholders of approximately $1.1 billion on a fully diluted basis, a total enterprise value of approximately $3.0 billion for AK Steel and an acquisition multiple of 5.6x LTM Adjusted EBITDA.

The transaction will combine Cliffs, North America's largest producer of iron ore pellets, with AK Steel, a leading producer of innovative flat-rolled carbon, stainless and electrical steel products, to create a vertically integrated producer of value-added iron ore and steel products. The combined company will be ideally positioned to provide high-value iron ore and steel solutions to customers primarily across North America.

Mr. Goncalves stated: "We are excited to be able to deliver real value to the shareholders of both Cliffs and AK Steel through a value enhancing and leverage-neutral transaction. By combining the best-in-class quality of AK Steel's assets and its enviable product mix with Cliffs' debt profile and proven management team, we are creating a premier North American company, self-sufficient in iron ore pellets and geared toward high value-added steel products."

He continued, "The pro forma Cliffs will be a vertically integrated steel company that is expected to drive improved profitability for existing Cliffs and AK Steel shareholders and is well-positioned to serve both the blast furnace and electric arc furnace segments. In addition, Cliffs' existing strong balance sheet and self-sufficiency in pellets for the combined company provide flexibility to pursue additional growth opportunities, including the potential future utilization of the blast furnace in Ashland to produce merchant pig iron, an opportunity neither company could pursue on a standalone basis."

Mr. Goncalves concluded, "For Cliffs, we expect to realize immediate growth and a long-desired objective of a more diverse customer base, as well as more predictable cash flow generation due to the contracted nature of AK Steel's sales of high-end automotive steel. Our track record of providing high-grade iron ore combined with AK Steel's recognized ability to produce the highest quality steel grades, creates a highly complementary and compelling business model. We look forward to welcoming the AK Steel team into our organization and creating a unique company focused on executing value-enhancing opportunities for all of our stakeholders."

Roger K. Newport, CEO of AK Steel, added, "We believe this transaction is a compelling opportunity for AK Steel shareholders to participate in the substantial upside potential of what will be a premier vertically integrated producer of value-added iron ore and steel products with significant scale and diversification. Our shareholders will benefit from exposure to a larger, more diversified company that is better positioned to capitalize on growth opportunities. The combination of Cliffs' iron ore pellet capabilities and our innovative, high-quality steel product development and production is strategically compelling. Together, we expect to be able to take advantage of growth opportunities faster and more fully than either company could on its own. With AK Steel's 120-year heritage, which began in Ohio, and expertise in steelmaking, AK Steel and Cliffs make an excellent combination, which we expect will facilitate a smooth integration process."

**The Proxy Omits Material Information**

27.     On January 8, 2020, Defendants filed a materially incomplete and misleading Proxy with the SEC.  Since the Proposed Transaction is expected to close in the first half of 2020, the Shareholder Vote on the Proposed Transaction is imminent.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for AKS' public common stockholders to make an informed voting decision in connection with the Proposed Transaction.

28.     The Proxy fails to provide enough information regarding financial projections for the Company and Cleveland-Cliffs.  In particular, the Proxy fails to disclose: (i) all line items underlying the non-GAAP metrics for all projections; and (ii) a reconciliation of all non-GAAP to GAAP metrics for all projections.  Further, the Proxy omits material information regarding Goldman Sachs' financial analyses.

29.     First, the Proxy omits the line items underlying the non-GAAP metrics (i.e. Unlevered Free Cash Flow, Adjusted EBITDA) for all projections: (i) *Cliffs Unaudited Forecasted Financial Information*; (ii) *AK Steel-Adjusted Cliffs Unaudited Forecasted Financial*

*Information*; (iii) *AK Steel Unaudited Forecasted Financial Information*; (iv) *Cliffs-Adjusted AK Steel Unaudited Forecasted Financial Information*; and (v) *Pro Forma Unaudited Forecasted Financial Information*. Proxy at 112-118.  In addition, for all the projections mentioned above, the Proxy omits a reconciliation of non-GAAP to GAAP metrics. *Id.*

30.     If a Proxy discloses financial projections and valuation information, such information must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).  Accordingly, Defendants have disclosed some of the information related to the projections relied upon by Goldman Sachs but have omitted crucial line items and reconciliations. Thus, Defendants' omissions render the projections disclosed on pages 112 to 118 of the Proxy misleading.

31.     Second, the Proxy fails to disclose material information with respect to the financial analyses conducted by Goldman Sachs regarding the Proposed Transaction.

32.     With respect to Goldman Sachs' *Implied Premia and Multiples* Analysis, the Proxy omits the number of fully diluted shares of AKS common stock outstanding as of November 29, 2019, as well as the Company's net debt as of September 30, 2019. Proxy at 107.

33.     As for the *Premia Paid Analysis*, the Proxy fails to disclose the premiums paid in each of the 82 all-stock acquisitions observed, as well as the specific acquisitions that were observed. *Id.* at 108.

34.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis for*

*AK Steel*, the Proxy does not include: (i) the elements used to calculate AKS' weighted average cost of capital regarding the discount rates observed ranging from 10.5% to 11.5%; (ii) the range of illustrative terminal values for AKS for the period after December 31, 2024; (iii) the assumptions underlying the terminal year multiples ranging from 6.0x to 7.0x; (iv) the assumptions underlying the observed perpetuity growth rates of 1.2% to 3.3% for AKS; (v) the net debt of AKS as of September 30, 2019; and (vi) the number of fully diluted shares of AKS common stock as of November 29, 2019. *Id.* at 107-108.

35.    With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis for AK Steel Shares on a Pro Forma Basis*, the Proxy fails to disclose: (i) the range of illustrative terminal values for Cleveland-Cliffs on a pro forma basis as of December 31, 2024; (ii) the assumptions underlying the terminal year multiples ranging from 6.0x to 7.0x to the estimated terminal year Adjusted EBITDA of Cleveland-Cliffs on a pro forma basis; (iii) the assumptions underlying the selected implied perpetuity growth rates for Cleveland-Cliffs of .4% to -1.9% for the period after December 31, 2024; (iv) the net debt of Cleveland-Cliffs as of September 30, 2019, on a pro forma basis; and (v) the number of fully diluted shares of Cleveland-Cliffs common stock outstanding as of November 29, 2019, on a pro forma basis. *Id.* at 108-109.

36.    These key inputs are material to AKS shareholders, and their omission renders the summary of Goldman Sachs' Discounted Cash Flow Analyses incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."   Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id.*  As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars*....This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices***. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, AKS shareholders cannot evaluate for themselves the reliability of Goldman Sachs' Discounted Cash Flow Analyses, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or was the result of an unreasonable judgment by Goldman Sachs, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

37.     Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

38.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision concerning whether to vote in favor of the Proposed Transaction and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

39.      Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.      Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78 of this title."  15 U.S.C. § 78n(a)(1).

41.      Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

42.      The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

43.      Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial projections for AKS and Cleveland-

Cliffs; and (ii) the valuation analyses performed by Goldman Sachs in support of its fairness opinion.

44.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

45.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Goldman Sachs reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Goldman Sachs, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review Goldman

Sachs' analyses in connection with their receipt of the fairness opinions, question Goldman Sachs as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

46.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

47.     AKS is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

48.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of AKS within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of AKS, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

53.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 16, 2020                              **MONTEVERDE & ASSOCIATES PC**

By: _/s/ Juan E. Monteverde_
      Juan E. Monteverde (JM-8169)
      The Empire State Building
      350 Fifth Avenue, Suite 4405
      New York, NY 10118
      Tel:(212) 971-1341
      Fax:(212) 202-7880
      Email: jmonteverde@monteverdelaw.com

      *Attorneys for Plaintiff*